**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 05 2014, 9:57 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL B. TROEMEL**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| R.W. & K.W., Minor Children, | ) ) | |
| and | ) ) | |
| B.W., Father, | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 79A02-1402-JT-120 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Faith Graham, Judge
Cause Nos. 79D03-1306-JT-39 and 79D03-1306-JT-40

**September 5, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

B.W. (Father) appeals the termination of his parental rights to R.W. and K.W. (collectively, Children). We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Father and H.P. (Mother)[2] were the parents of R.W.,[3] born April 4, 2009, and K.W., born March 28, 2011. On January 3, 2012, the Department of Child Services (DCS) received a report that Father and Mother were using drugs in the presence of Children; Father and Mother were giving drugs, including heroin and marijuana, to Children; Father was selling drugs from the family home; and Father stored firearms where Children might have access to them. On February 6, Children tested positive for methamphetamine and heroin. DCS filed a petition the next day to adjudicate Children as Children in Need of Services (CHINS), and Father turned Children over to DCS on February 17. After a hearing, the court adjudicated the Children as CHINS on April 20.

On May 4, the court returned the Children to Mother's care and ordered Mother and Father to submit a hair sample for drug testing within twenty-four hours, stay drug and alcohol free, participate in home-based case management services, and participate in couples counseling. By this time, Father was no longer living with Mother and the court required him

---

[1] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal" issued on September 18, 2012, and effective on July 1, 2012. *See* Ind. Supreme Court Case No. 94S00-1209-MS-522. Therefore, the citations to the transcript will be to the "A/V Rec." We acknowledge the ongoing cooperation of the Honorable Faith A. Graham of the Tippecanoe Superior Court and parties' counsel in the execution of this pilot project.

[2] Mother's parental rights were also terminated, but she does not participate in this appeal.

[3] Under Administrative Rule 9, children who are the subject of juvenile proceedings should be identified using their initials. Ind. Admin. R. 9(G)(1)(e)(i). Father's counsel failed to follow that rule by including the full names of all individuals in his brief and supporting materials.

to notify DCS in advance if he planned to stay at Mother's home. Father was allowed unlimited contact with Children as long as he was in compliance with all court orders.

On May 29 and June 4, Mother tested positive for drugs. DCS removed Children from her home after an emergency modification hearing on June 14. The court placed Children in foster care, where they remained during the CHINS and termination proceedings.

The trial court held review hearings on July 9 and December 5, during which DCS reported Father was not keeping in contact with DCS, was missing service provider appointments, and was not attending to K.W.'s dietary needs during visits. On March 5, 2013, the court held a permanency hearing, but Father and Mother did not attend because they claimed they had the wrong time for the hearing and were involved in a car accident on the way to the hearing. Based on the recommendation of DCS and the Court-Appointed Special Advocate (CASA), the trial court appointed new counsel for Mother because Mother and Father separately were seeking reunification with Children due to evidence of domestic abuse. On March 25, the trial court ordered separate services for Mother and Father, cancelled couples counseling, and entered a no-contact order between Father and Mother. The trial court ordered all visitation with Children to be supervised.

On May 13, the trial court found Father in contempt due to multiple violations of the no-contact order, a positive alcohol screen on March 19, and several recent missed or cancelled appointments with his therapist. On June 10, DCS filed a petition to terminate Father's parental rights to Children. On September 9 and October 30, the trial court held evidentiary hearings on the petition to terminate Father's parental rights to Children and on

January 27, 2014, the trial court entered an order terminating his parental rights to Children.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses.[4] *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied, cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests

---

[4] In his brief, Father asks us to "consider an appellate standard of review with less deference to the trial court in this video recorded case." (Br. of Appellant at 9.) To the extent Father is inviting us to judge the credibility of the witnesses because we have an audiovisual transcript instead of a paper transcript, we decline his invitation.

4

of the parents to those of the child, however, when evaluating the circumstances surrounding

a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not

be terminated solely because there is a better home available for the child, *id.*, but parental

rights may be terminated when a parent is unable or unwilling to meet his or her parental

responsibilities. *Id.* at 836.

When the State decides to request termination of a parent-child relationship, its

petition must allege:

> (A) that one (1) of the following is true:
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B) that one (1) of the following is true:
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove these allegations by clear and convincing

evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds

5

the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8. Father challenges the sufficiency of the evidence supporting the trial court's findings under subsections (B) and (C) of Section 31-35-2-4(b)(2).

1.  Reasonable Probability Conditions will not be Remedied

Because our legislature wrote subsection (B) in the disjunctive, a trial court needs to find only one of the three requirements established by clear and convincing evidence before terminating parental rights. *In re L.S.*, 717 N.E.2d at 209. The trial court found the conditions that resulted in Children's removal would not be remedied.

In making such a determination, a trial court must judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*. Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id*. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762

6

N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Children were removed from Father's care due to drug use in the home and continued living in foster care due to domestic violence between Father and Mother. The trial court found:

> 16. Father also has a history of instability. Father repeated the seventh grade three (3) times then dropped out of high school at age fifteen (15) or sixteen (16). Father was arrested at the age seventeen (17) and tried as an adult as noted below. Father obtained a GED in prison as well as an Associate's Degree. Father has since taken courses at Ivy Tech. Father has a history of employment. Since being released from prison, Father has resided with Paternal Grandfather and Paternal Great Grandmother.
>
> 17. Father has an extensive history of criminal behavior. On August 10, 2001, Father was charged in Newton County with Count I, Robbery with [a] Deadly Weapon (A Felony), Burglary with [a] Deadly Weapon (A Felony), Criminal Confinement (B Felony), Battery with [a] Deadly Weapon (C Felony), Theft (D Felony), and Residential Entry (D Felony). Father was convicted of Residential Burglary (B Felony) on July 19, 2002 and sentenced to seventeen (17) years incarceration with fifteen (15) years executed and two (2) years suspended on supervised probation.
>
> 18. On January 25, 2002, Father was charged in Clinton County with Count I, Burglary (B Felony) and Count II Burglary (B Felony). Father was convicted on both Counts on October 10, 2002 and sentenced to ten (10) years on each Count to be served concurrently. The sentences in both counties were served concurrently. Father was released from prison on or about February 7, 2007.
>
> 19. Father has long-term mental health and substance abuse issues. Medical records indicate Father was admitted for hospitalization with suicidal ideation on November 29, 2011 complaining of acute and chronic back pain. Medical notes indicate Father was withdrawing from heroin and benzodiazepines. Father admitted using heroin, [and] various prescription medications including amphetamines and benzodiazepines. Oxycodone and other opiates were present upon urinalysis. Father reported he knew he was in trouble and that he relapsed after his children were removed. Father reported being clean for four (4) months after treatment with Dr. Turner and that Dr. Turner would not allow him to resume treatment due to missed appointments. Auditory hallucinations were noted as well as paranoia. Father was diagnosed with Major Depressive Disorder (Recurrent, Severe with Psychotic Features), Polysubstance Abuse (Alcohol, Opiates, Benzodiazepines), Consideration of

7

Antisocial Personality Disorder and Borderline Personality Disorder. Father was discharged on December 1, 2011 with multiple prescribed medications. The discharge plan included addictions treatment for marked substance abuse problems. Father had been accepted into the Lighthouse Residential Addiction Program in Monticello. Father did not successfully complete that treatment.

20. In February 2013, Father was diagnosed with Generalized Anxiety Disorder and ADD with Hyperactivity, consistent with prior diagnoses. The treatment provider recommended ongoing medication management. Father's drug screens in the CHINS case were negative for illegal substances. It has been difficult to determine if Father takes medication as prescribed since the results of his drug screens indicate varying levels for prescription medications. Father recognizes he remains an addict always at risk for relapse. There is no indication of continued drug use by Father with the exception of failing to submit to a hair drug screen after shaving all body hair.

21. Father's frustration during the CHINS case was not within a normative range. Father often had difficulty being redirected during visits from focusing on matters rather than being engaged with [Children]. The need for redirection was observed across multiple agencies and service providers. Father's fixation on case matters was pervasive both during and outside visitations.

* * * * *

25. As a result of Mother's continued drug use, the treatment team repeatedly advised Father to separate from Mother and attempt reunification independently. There were no practical barriers to Father obtaining reunification if he followed orders, progressed in services, and disengaged from Mother. Father acknowledged that remaining with Mother could result in termination of his parental rights. Nevertheless, Father struggled to accept Mother's substance abuse despite contrary evidence. Father remained fixated [on] attempting to convince service providers that Mother's positive drug screen results were inaccurate rather than focusing on his own services. Father still refuses to acknowledge [Children's] exposure to drugs may have been caused by Mother.

* * * * *

27. Service providers observed bruises on Mother between April and August 2013 which appeared as though someone had grabbed her neck. Mother claimed an unknown origin for the observed marks stating she has anemia, bruises easy [sic], and was scratched by a cat. A no contact order was issued between the parents.

28. Both parents violated the no contact order. Father initially denied violations of the no contact order until confronted with video evidence. Thereafter, Father stopped communicating with service providers stating he was "done with you all." Father failed to complete a domestic violence treatment program after being discharged due to attendance issues.

8

29. The troubled relationship between the parents is, at best, codependent and, at worst, fraught with domestic violence. Mother refused to disengage from a tumultuous relationship with Father. Father refused to disengage from Mother's ongoing substance abuse despite the risk it creates for his own relapse. Father is unable or unwilling to recognize the impact of drug use, conflict, and trauma on [Children]. Both parents have been dishonest over the course of the proceedings. Father's failure to disengage from the relationship has jeopardized his ability to achieve reunification.

30. Father was found in contempt on May 13, 2013 for failure to remain alcohol free, failure to participate in services and failure to follow a no contact order. Father tested positive for alcohol, canceled therapy appointments, and had contact with Mother on several occasions. A sentence of incarceration was suspended upon the condition of Father's full compliance with orders.

31. Father accepts absolutely no responsibility for the CHINS proceeding, his failure to successfully complete services, or his inability to achieve reunification. Father last contacted DCS in September [2013] and has not visited [Children] since. Although Father was directed by service providers to contact DCS, he failed to initiate contact or make reasonable efforts to resume services or visitations.

(App. at 17-18.) Based on those findings, the trial court concluded:

There is a reasonable probability that the conditions that resulted in the removal of [Children] from the parents' care or the reasons for the continued placement outside the home will not be remedied. Neither parent has yet to demonstrate the ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either parent will be able to maintain stability and remain substance free in order to care and provide adequately for the children.

(*Id*. at 18.)

Father argues he is no longer using drugs or alcohol, and despite evidence to the contrary, he attended substance abuse counseling, relapse prevention, and therapy sessions. His arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). DCS presented evidence Father had a history of substance abuse, tested positive

for alcohol, missed multiple drug screens, and avoided drug screens by shaving his head, armpits, and legs. DCS also presented evidence of Father's non-compliance with services, including repeated violations of a no-contact order with Mother; multiple missed counseling sessions, some resulting in discharge from the program; and failure to attend and act appropriately during visits with Children. This evidence supports the trial court's findings, which support its conclusion the conditions that resulted in Children's removal would not be remedied.

### 2. Best Interests of the Children

In determining what is in the best interests of children, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the parent to those of the children. *Id.* Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

The trial court concluded termination was in the best interests of Children based on these findings:

> 32. [CASA] supports termination of parental rights in the best interests of [Children]. CASA noted that Mother's drug use continues and Father's mental stability is concerning especially as it relates to contact with Mother given the history of domestic violence. [R.W.'s] progress in therapy has been

10

intermittent and appears to be related to changes in the visitation schedule. [K.W.'s] intestinal distress has lessened and he is become [sic] nearly potty trained since visits have ceased. [Children] are doing well in placement and have no other special needs. [Children] are adoptable even if the current placement is unable to adopt for any reason.

33. Although the parents love [Children], neither has the ability to meet [Children's] needs long-term. All imaginable services have been offered and nothing is singularly different in today's circumstances since the time of removal. To continue the parent-child relationship would be detrimental to [Children]. [Children] need permanency now.

(App. at 18.)

Father argues the "evidence of a bond between [Father] and [Children] was overwhelming, and there was no evidence of parenting problems." (Br. of Appellant at 12.) His argument is an invitation for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses on appeal). DCS presented evidence Father could not provide proper care for Children due to Father's criminal behavior, substance abuse, and mental illness. That evidence supports the findings from which the trial court concluded the termination of Father's parental rights was in Children's best interests.

## CONCLUSION

DCS presented sufficient evidence the conditions under which Children were removed from Father's care would not be remedied and termination was in the Children's best interests. Accordingly, we affirm the decision of the trial court.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.

11